FILED
AUG 27 2014
USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MYKOLA IVANENKO, LARYSA IVANENKO
"LUXEXPRESS-II" CORP.,

                Plaintiffs,

    -v-

VIKTOR YANUKOVICH, ALEXANDER YANUKOVICH,
VIKTOR YANUKOVICH, JR., MYKOLA AZAROV,
ALEXEY AZAROV, YURY ANISTRATENKO, VALERIY
KHOROSHKOVSKIY, ANDREW KLYUYEV, SERGEY
KLYUYEV, VITALIY ZAKHARCHENKO, VIKTOR
PSHONKA, ARTEM PSHONKA, RENAT KUZMIN,
ANATOLIY MELNIK, VLADIMIR GOGOL, OLENA
LUKASH, VICTOR TATKOV, ARTUR EMELYANOV,
BORIS KOLESNIKOV, VLADIMIR KOZAK, ALEXEY
KRYVOPISHIN, ALEXSANDER RYBAK, ALEXANDER
POPOV, ANATOLIY GOLUBCHENKO, GALINA
GEREGA, LEONID CHERNOVETSKIY, SERGEY
KURCHENKO, and JOHN DOES 1 through 20,

                Defendants.
---------------------------------------------------------x

Index No.

**VERIFIED COMPLAINT**

14 CIV. 6975
JUDGE BERMAN

      Plaintiffs MYKOLA IVANENKO, LARYSA IVANENKO and LUXEXPRESS-II, LLC, by and through their undersigned counsel, for their Verified Complaint against the above-cptioned defendants, allege as follows:

**PARTIES**

1. Plaintiff MYKOLA IVANENKO, a Ukraine national, is the General Director of plaintiff Luxexpress-II, LLC, and the husband of plaintiff Larysa Ivanenko, the sole owner of Luxexpress II, LLC. He currently resides in New York, and is seeking political asylum in the U.S.

2. Plaintiff LARYSA IVANENKO, a Ukraine citizen and owner of Luxexpress-II, LLC, currently resides in New York with her husband, Mykola, and their two children. She is also seeking a political asylum and U.S. citizenship.

3. Prior to its destruction by defendants in 2012, plaintiff LUXEXPRESS-II" LLC (hereinafter either "Luxexpress-II" or "the Company") was a company based in Kiev, Ukraine that primarily imported U.S. manufactured automobiles into Ukraine for sale there. In addition, plaintiff

Luxexpress-II became the official dealer for retail sale and service maintenance for Honda, Nissan and KIA cars.

4. Luxexpress-II was located on one of the most prestigious and valuable plots of land in Kyiv, at 1 Prytchalna St., which is on the bank of the Dnieper River in Kiev. Under the leadership of plaintiffs Mykola and Larysa Ivanenko, Luxexpress-II was engaged in various land development projects, including a proposed Marriott hotel complex, which would have included a business and trade center, plus a large parking garage. The proposed total area of the hotel, business center and trade center complex was 174,590 square meters.

5. Defendant VIKTOR YANUKOVICH is the former President of Ukraine.

6. Defendant ALEXANDER YANUKOVICH, the son of Victor Yanukovich, was and is a General Director of the company known as "Holding Mako."

7. Defendant VIKTOR YANUKOVICH, JR., also the son of Victor Yanukovich, was a member of the Ukraine Parliament.

8. Defendant MYKOLA AZAROV is the former Prime Minister of Ukraine.

9. Defendant ALEXEY AZAROV, the son of Mykola Azarov, was a member of the Ukraine Parliament.

10. Defendant YURY ANISTRATENKO is the former First Deputy Head of the Cabinet of Ministers of Ukraine.

11. Defendant VALERIY KHOROSHKOVSKIY is the former First Vice Prime Minister of Ukraine.

12. Defendant ANDREY KLYUYEV is the former Secretary of the National Security and Defense Council of Ukraine.

13. Defendant SERGEY KLYUYEV is the brother of Andrey Klyuyev, and a member of the Ukraine Parliament.

14. Defendant VITALIY ZAKHARCHENKO is the former Minister of Internal Affairs of Ukraine.

15. Defendant VIKTOR PSHONKA is the former Prosecutor General of Ukraine.

16. Defendant ARTEM PSHONKA, the son of Victor Pshonka, is a member of the Ukraine Parliament.

17. Defendant RENAT KUZMIN is the former Deputy Prosecutor General of Ukraine.

18. Defendant VICTOR ZANFIROV is the former Deputy Prosecutor General of Ukraine.

19. Defendant ANATOLIY MELNIK is the former Prosecutor of Kyiv.

20. Defendant VLADIMIR GOGOL is the Deputy Prosecutor of Kyiv.

21. Defendant OLENA LUKASH is the former Minister of Justice of Ukraine.

22. Defendant VICTOR TATKOV is the former Chairman of the Supreme Economic Court of Ukraine.

23. Defendant ARTUR EMELYANOV is the former Chairman of the Economic Court of Kyiv.

24. Defendant BORIS KOLESNIKOV, the former Minister of Infrastructure of Ukraine, is a member of the Ukraine Parliament.

25. Defendant VLADIMIR KOZAK is the former Director General of Railways.

26. Defendant ALEXEY KRYVOPISHIN is the principal executive of the South Western Railway.

27. Defendant ALEXSANDER RYBAK is the former Chairman of the State Board of Architectural Construction and Inspection of Ukraine.

28. Defendant ALEXANDER POPOV is the former Chief of the Kyiv City State Administration.

29. Defendant ANATOLIY GOLUBCHENKO is the former Deputy Chief of the Kyiv City State Administration.

30. Defendant GALINA GEREGA is the former Deputy Mayor of Kyiv, and a former Cabinet Secretary.

31. Defendant LEONID CHERNOVETSKIY is the former Chief of the Kyiv City State Administration.

32. Defendant SERGEY KURCHENKO is a Ukrainian businessman and owner of the company known as VETEK (East European Energy Company).

## JURISDICTION AND VENUE

33. This Court has personal jurisdiction over all defendants by virtue of the fact that their acts of racketeering and/or other tortious activities have had a direct impact on business and other activities in the United States, or by operation of Fed. R. Civ. P. 4(k) (1-2).

34. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 18 U.S.C. § 1964(c) (RICO). Plaintiffs allege that Defendants conducted multiple racketeering activities that had a continuity of structure and purpose over an extended period of time. RICO provides federal jurisdiction for persons "injured in [their] business or property" by acts taken pursuant to a racketeering "enterprise." 18 U.S.C. § 1964(c).

35. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims brought under the laws of the State of New York.

36. Venue properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) and (c). Furthermore, there is no foreign independent or impartial forum in which to bring this action.

## RELEVANT FACTS

37. Plaintiffs Mykola and Larysa Ivanenko founded Luxexpress-II in 1993. According to two Ordinances, dated November 11, 1994 (No. 506) and November 22, 1995 (No. 494), Luxexpress-II was permitted to use the plot of land comprising 7844 square meters located at 1 Prytchalna Street in Kharkivskyi District in the City of Kyiv up until December 31, 1997. *See* **Exhibits 1** and **2** attached hereto.

38. On or about January 11, 1996, Luxexpress-II began operation of a micro-market at its Prytchalna Street location, which comprised a single-line store for building supplies, a cafe, a warehouse and a parking lot. *See* Acceptance Commission Certificate No 175, attached hereto as **Exhibit 3**.

4

39. During 1998, Luxexpress-II signed two long-term land tenure agreements for the plot of land at Prytchalna Street.

40. Under the first agreement (No. 90-5-00035), dated February 19, 1998, Luxexpress-II leased 0.5994 hectares of land for a 10 years period, which contract was extended until 2018. *See* **Exhibit 4** attached hereto.

41. Under the second agreement (No. 90-5-00034), also dated February 19, 1998, Luxexpress-II leased 1.6184 hectares of land for a term of 49 years, until 2047. *See* **Exhibit 5** attached hereto.

42. From 1998 through 2006, the Company developed into a versatile car retail dealer of various U.S. manufactured automobiles, as well as for Honda, Nissan and KIA vehicles.

43. One of the U.S.-based companies that Luxexpress-II worked closely with on the importation and sale of American cars was the Alamo Group.

44. By 2000, Luxexpress-II completed construction of a diversified car service center, specializing in retail sales and service maintenance, as well as the continued importation of American cars. In connection with that business, it held several commercial patents, trade permits and other permits as required.

45. Luxexpress-II continued to conduct business for 18 years, from 1994 until July, 2012. According to data collected by the Organizing Committee of the National Business Rating, and in accordance with information collected by the State Statistics Committee of Ukraine, the Company was among the leaders in the industry, taking second place in the following categories: Sales Results, Profits, Labor productivity, and Payroll. It was also rated as being in fourth place in the Retail Car Trade industry. At its height, the Company had a payroll of 200 people. *See* **Exhibit 6** attached hereto.

46. On December 10, 2003, the Cabinet of Ministers of Ukraine issued Ordinance No 755, relating to "the construction of the road and railway bridge across the Dnieper River in the city [of] Kiev on the railway section Kyiv – Moscowsky – Darnytsya" according to which the

Customer's functions are borne by the State Territorial – Sectoral Association (STSA) 'South-Western Railway' (Pivdenno-Zakhidna Zaliznytsya), hereinafter referred to as "the road/railway bridge" or "the Bridge." Pursuant to this Ordinance, the land leased by Luxexpress-II was included in the road/railway bridge construction zone.

47. Ordinance No. 755, which was signed by Viktor Yanukovych, the Prime Minister of Ukraine at that time, directed the Kyiv City Council to amend the General Plot Plan for the City until 2020, in order to incorporate the plans for the road/ railway bridge. *See* **Exhibit 7** attached hereto.

48. STSA South-Western Railway sent a letter to Luxexpress-II (No. 119-НГ-311), dated February 17, 2004, which was signed by the Chief Engineer, V.G. Tyagulskyi. *See* **Exhibit 8** attached hereto. The letter proposed an agreement on the precise location of the land needed for the road/railway bridge project.

49. On or about April 15, 2004, Luxexpress-II received another letter (No. НЗП-6-153), signed by the Deputy Chief of the Railway, R.M. Yosyfovych, which identified that portion of the Company's land which would be used in conjunction with the construction of the road/railway bridge, and proposing that a calculation be performed with regard to the amount of losses to be reimbursed to the Company. *See* **Exhibit 9** attached hereto.

50. On or about December 19, 2005, Luxexpress- II received a third letter from STSA South-Western Railway (No. НГ-13-676), signed by Chief Engineer Tyahulskyi, again noting that part of the Company's property was being seized as in accordance with the general construction plan. *See* **Exhibit 10** attached hereto.

51. On March 14, 2005, the Company also received a letter from the Board of Directors of the STSA South-Western Railway (No.HD-6388), signed by Deputy Chief A.O. Dobrovolskyi, which proposed an agreement regarding the conditions under which the building containing the varnish and paint shop would be relocated out of the construction area. *See* **Exhibit 11** attached hereto.

52. On March 15, 2006, in a letter (No 2/59-6/155) from Ukrzaliznytsya (the Ukrainian Railway) to Luxexpress- II, signed by the Acting Deputy General Director, I.O. Kudenko, it was noted: "To resolve the question of reimbursement of losses to Luxexpress- II connected with the construction of bridge across the Dnieper River, [a] Working group was created within STSA South-Western Railway." *See* **Exhibit 12** attached hereto.

53. In 2006, Luxexpress-II experienced a sharp decline in business relating to the construction of the Bridge and the land-use issues under discussion.

54. On May 18, 2006, the Shevchenko district court of Kyiv decided a case involving the Company (Case No. 2-4501/06), holding that construction of the bridge across the Dnieper River was damaging Luxexpress-II's business operations. Among other things, the court found that Luxexpress-II incurred substantial business losses, including the loss of its ability to use its leased property. The court also found that the Company had lost the prospect for any further business development of the property, including the loss of future business profits. In its conclusion, the court ordered the South Western Railway to compensate the Company for all of its material losses. *See* **Exhibit 13** attached hereto.

55. By Decision of the Court of Appeals of the City of Kyiv, dated August 15, 2006, the decision of the lower court was affirmed. *See* **Exhibit 14** attached hereto.

56. On December 27, 2006, the Supreme Court of Ukraine reversed the holdings by the lower courts on jurisdictional grounds, noting as follows:

> Given that the actual dispute arose between legal persons: "Luxexpress-II" LLC and the Railway, which according to Art.1, 12 of the Civil Code of Ukraine and Art.15 of the Civil Code of Ukraine is not related to civil jurisdiction and subject to review by the economic court, judicial decisions are to be cancelled with full closure of case proceedings in accordance with paragraph 1 of Art.205 of the Civil Code of Ukraine on the grounds provided for by part 1 of Article.340 of the Civil Code of Ukraine.

*See* **Exhibit 15** attached hereto.

57. Based upon the calculations of the Central Service of Ukrainian State Investment Expertise (No 189-2), dated August 18, 2006, and in accordance with a letter, dated April 4, 2007 (No 06-374), issued by the Institute of Kyivdiprotrans, the total amount of the compensation due

7

Luxexpress- II related to the transfer of its property to STSA South–Western Railways was estimated to be 100,000,000 UAH, and, in addition, the Company's estimated damages for all other costs and losses was approximately 100,000,000 UAH (approximately $35 - 36 million U.S. dollars). *See* **Exhibit 16** attached hereto.

58. These estimates of the Company's losses were confirmed by a letter (No. 59/1890), dated February 3, 2012, from Deputy Chief of Shevchenkyvskyi, office of District Administration of the Ministry of Internal Affairs of Ukraine, City of Kiev, stating:

> During the audit it was found that according to the draft summary of costs and estimated cumulated payments as of 04.04.2007 [April 4, 2007] No 06-374 it appears that for [the] solution of the property issues with Luxexpress- II, STSA South-Western Railway scheduled to pay the Company's losses in the amount of 100 000 000 UAH, of a general estimate value and 100 000 000 UAH of other costs. [As of today] the money funds were spent by the STSA South-Western Railway officers for needs other than the target purpose. Taking into account all above mentioned actions of the STSA South-Western Railway are considered to have elements of a crime under Art. 364 of the Criminal Code of Ukraine.

*See* **Exhibit 17** attached hereto.

59. The necessity of seizing the Company's property was further confirmed by a letter dated October 8, 2009 from the Institute Kyivdormistproekt (No. 121/ДП-КАМП), stating: "This project [was] developed and agreed with the State Enterprise Institute of General Plot Plan of Kyiv (Kyivproekt" PJSC) and allows for partial use of Luxexpress-II land plots on which the buildings are located." *See* **Exhibit 18** attached hereto.

60. Further proof that the bridge construction zone included the buildings and property of Luxexpress-II is set forth in a letter dated October 9, 2009 from the Director of the Kyiv General Plot Plan Institute (No. 332), stating:

> Planning solution for the traffic junction is developed by the institute "Kyivdormostproekt" and agreed by the State Enterprise " Kyiv General Plot Plan Institute" as a part of the project "road and railway bridge across the Dnieper River in Kiev (with access lanes) on the railway section "Kyiv – Moscowskyi – Darnytsya" and it provides for a partial use of the land plot with the demolition of "Luxexpress-II" LLC buildings.

*See* **Exhibit 19** attached hereto.

61. Also, according to a letter from the Administration of Urban Planning, Architecture and Urban Environment Design (No 07-11100), dated October 26, 2009, at the time that the bridge construction project was approved, STSA South-Western Railway was directed to draw the land use documents in the following prescribed manner:

> The approval shall become effective upon resolution in accordance with established procedure under the current law on property and legal matters (including those with Luxexpress-II).

*See* **Exhibit 20** attached hereto.

62. For a substantial time period, Luxexpress-II cooperated with the U.S. Commercial Service, which was part of the U.S. Embassy in Ukraine. Around 2007, U.S. Commercial Specialist Oleksandr (Alexander) Zavgorodniy organized a meeting during which he introduced plaintiff Mykola Ivanenko to U.S. citizen and businessman Dana Anderson ("Anderson"), who owned a construction company based in the U.S.

63. After this, plaintiff Mykola Ivanenko started developing commercial relations with Anderson, including, among other things, a Harley-Davidson ("HD") motorcycle dealership on the Company's property. Later, on February 10, 2009, plaintiff Mykola Ivanenko and Anderson met David Hackshall, regional manager of "HD" for Europe. Hackshall and other representatives of HD visited the offices of Luxexpress-II in Kyiv and, after a successful meeting, Mykola Ivanenko and Anderson visited Milwaukee, Wisconsin to have a look at HD's plant and museum there.

64. Plaintiffs developed a business plan to build a Marriott hotel on the Company's property in Kyiv, and in 2007, they retained the architectural firm "Yezhov" to design an architectural plan for the construction of a multifunctional office-hotel complex on the property. *See* **Exhibit 21** attached hereto.

65. In or about 2010, plaintiff Mykola Ivanenko proposed to the Marriott Corporation that it consider supporting the planned hotel complex project in Kyiv, and when Marriott expressed great interest, a Marriott representative was scheduled to come to Kyiv on July 26, 2012 for a